IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JAN M. F.,[1]<br><br>    Plaintiff,<br><br> vs.<br><br>KILOLO KIJAKAZI,<br>**Acting Commissioner of Social Security,**<br><br>    Defendant. | Court No. 2:23-CV-00031-DBP<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION**<br><br>**Magistrate Judge Dustin B. Pead** |

  All parties have consented to the undersigned conducting all proceedings in this case.[2] Plaintiff Jan F. ("Plaintiff"), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). After careful review of the Administrative Record ("AR"),[3] the briefs submitted by the parties,[4] and arguments presented at a hearing held on November 13, 2023,[5] the undersigned concludes that the Commissioner's decision is supported by substantial evidence and legally sound and is, therefore, AFFIRMED.

---

[1] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] ECF No. 7, Consent to Magistrate Jurisdiction; *see* 28 U.S.C. § 636(c).

[3] ECF No. 8.

[4] ECF No. 11 (Pl. Br.); ECF No. 17 (Def. Br.); ECF No. 19 (Pl. Reply).

[5] ECF No. 23.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the scope of the court's review is specific and narrow. "[A]n ALJ's factual findings . . .'shall be conclusive' if supported by 'substantial evidence.'"[6] The substantial evidence standard is "not high."[7] Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [8] It is more than a mere scintilla,[9] but less than a preponderance.[10] The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close."[11]

To aid in this deferential review of agency fact-finding, courts require a modest statement of reasons against which to evaluate the record. However, the agency's reasons need not be "elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review."[12] The Court will not upset the ALJ's decision so long as "the agency's path may reasonably be discerned."[13] The Court "should, indeed must, exercise common sense" and not "insist on technical perfection."[14] Furthermore, in reviewing the record to determine whether substantial evidence supports the ALJ's decision, the Court "may neither reweigh the evidence nor

---

[6] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504, 2019 U.S. LEXIS 2480 (2019) (quoting 42 U.S.C. § 405(g)).

[7] *Id.* at 1154.

[8] *Id*. (quotations and citations omitted).

[9] *id*.

[10] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[11] *Biestek*, 139 S. Ct. at 1157.

[12] *Id*.

[13] *Garland v. Dai*, 141 S. Ct. 1669, 1679, 210 L. Ed. 2d 11, 2021 U.S. LEXIS 2740 (2021) (citation and internal quotation omitted); *Davis v. Erdmann*, 607 F.2d 917, 918 n.1 (10th Cir. 1979).

[14] *Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (citation and quotation omitted).

substitute [its] judgment for that of the [ALJ]."[15]

## II. BACKGROUND

Plaintiff applied for DIB benefits in September 2019, alleging disability beginning in May 2019.[16] Plaintiff completed high school and two years of college and worked in the relevant past as an IT manager, helpdesk technician, customer service supervisor, and customer service telephone representative.[17]

After a hearing,[18] an Administrative Law Judge ("ALJ") issued a February 2022 decision finding that Plaintiff was not disabled.[19] The five-step sequential evaluation for assessing disability directs the ALJ to consider: (1) whether the claimant is currently working; (2) if the claimant has a severe impairment; (3) if the impairment(s) meet or medically equal an impairment listed in Appendix 1; (4) if the impairment(s) prevent the claimant from doing past relevant work; and (5) if the impairment(s) prevent the claimant from doing any other work existing in significant numbers in the national economy.[20]

As relevant here, at step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine status post fusion with mild spondylosis, obesity, and social anxiety disorder.[21] Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in

---

[15] *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020).

[16] AR 36; AR 88; AR 128; AR 218-19.

[17] AR 77-81; AR 245; AR 277-84.

[18] AR 58-87.

[19] Tr. 36-52.

[20] 20 C.F.R. § 404.1520(a)(4).

[21] AR 38.

20 C.F.R. § 404.1567(b) except he could lift and/or carry 20 pounds up to 1/3 of an 8-hour workday, and 10 pounds up to 2/3 of an 8-hour workday; stand and/or walk for 6 hours, and sit for 6 hours of an 8-hour workday; perform all postural activities up to 1/3 of an 8-hour workday; use his bilateral upper extremities to reach in any direction up to 1/3 of an 8-hour workday; and occasionally interact with the public, supervisors, and co-workers.[22] At step five, the ALJ found that this RFC would allow Plaintiff to perform other work in significant numbers in the national economy.[23] The ALJ thus concluded that Plaintiff was not disabled under the Act.[24] The Appeals Council denied Plaintiff's request for review,[25] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[26] This appeal followed.

### III.  ANALYSIS

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly evaluate opinion evidence from his provider Gregory Iverson, D.O.[27] In particular, Plaintiff claims the ALJ did not provide a proper evaluation of the supportability and consistency factors when determining the persuasiveness of Dr. Iverson's opinions.[28] As discussed below, however, the court finds that the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. There is therefore no reversible error.

---

[22] AR 42.

[23] AR 51-52.

[24] AR 52; 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v).

[25] AR 22-27.

[26] 20 C.F.R. §§ 404.981, 422.210(a).

[27] Pl. Br. 9-13.

[28] Pl. Br. 11-13.

A.  **The ALJ's evaluation of Dr. Iverson's opinions is legally sound and supported by substantial evidence.**

Because Plaintiff filed his application for DIB after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations[29] Under the revised regulations, the ALJ must articulate how persuasive he finds all of the medical opinions and all of the prior administrative medical findings.[30] "The most important factors [considered in evaluating persuasiveness] . . . are supportability . . . and consistency," and the ALJ must explain how the ALJ considered those factors.[31] Further, when a medical source provides multiple medical opinions or prior administrative medical findings, the ALJ need not discuss each one individually, and instead may articulate how he considered the assessments from one medical source together in a single analysis.[32] Here, in evaluating Dr. Iverson's opinions, the ALJ applied the correct legal standards, and his decision is supported by substantial evidence.

In September 2019, Dr. Iverson opined that Plaintiff was limited to frequent sitting, occasional standing, and occasional walking; occasional pushing/pulling with the bilateral upper extremities; never climbing, twisting, bending, stooping, reaching above shoulder level, or operating heavy machinery; and occasionally lifting/carrying up to 20 pounds and never lifting/carrying more than 20 pounds.[33] In contrast, on the same date, Dr. Iverson also opined

---

[29] AR 36 (noting 2019 application date); AR 47-50; *see Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

[30] 20 C.F.R. § 404.1520c(b).

[31] 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2).

[32] 20 C.F.R. § 404.1520c(b)(1).

[33] AR 422-23.

that Plaintiff could not stand or walk for greater than 15 minutes without rest; sit for greater than 15 minutes without changing position; was limited to lifting less than 20 pounds; and could not perform heavy pushing or pulling.[34] These limitations are similar to the limitations alleged by Plaintiff.[35]

In October 2019, Dr. Iverson opined that Plaintiff could not stand more than 15 minutes without rest; sit no more than 15 minutes without position change; lift no more than 20 pounds; perform no repetitive lifting of less than 20 pounds; could not perform heavy pushing or pulling; and had limited walking.[36]

Several months later, in February 2020, in response to a letter from Plaintiff's insurance company, Dr. Iverson indicated that Plaintiff could not perform the occupational demands of sedentary work, defined as: mostly sitting and may involve standing and walking for brief periods of time; lifting, carrying, pushing, pulling up to 10 pounds occasionally with changes in position for brief periods; and where sit/stand workstations were common.[37] Dr. Iverson explained: "Most of [Plaintiff's] findings of pain and emotional findings have no way to verify objectively so I can do nothing but document what [Plaintiff] tells me."[38]

The ALJ considered Dr. Iverson's opinions and found them unpersuasive because they were not well-supported and were not consistent with the record as a whole.[39] The Court will

---

[34] AR 424.

[35] Plaintiff testified that he could stand for less than 30 minutes, walk for 10 to 15 minutes, sit for 10 to 15 minutes, lift and carry 15 to 20 pounds but not on a consistent basis, and that he had difficulty with bending, stooping, kneeling, crouching, crawling, and reaching. AR 65-66; AR 70.

[36] AR 495.

[37] AR 427; AR 567 (duplicate).

[38] AR 427.

[39] AR 49; 20 C.F.R. §§ 404.1520c(b) (the ALJ must articulate his consideration of persuasiveness, the

address Plaintiff's arguments that the ALJ did not provide a proper evaluation of the supportability and consistency factors in reverse order.[40]

### Consistency Factor[41]

The ALJ found Dr. Iverson's opinions unpersuasive because they were not consistent with the record as a whole, including objective evidence and the claimant's routine and conservative care.[42] The ALJ discussed the evidence that the ALJ considered in making such findings.[43]

The ALJ pointed to imaging and EMG-nerve conduction studies, noting his earlier detailed discussion of that evidence.[44] Significantly, the ALJ earlier discussed that September 2018 cervical x-rays indicated unchanged fusion at C6-C7 with solid interbody fusion and slight interval worsening disc degeneration at C4-C5 and C5-C6, but no evidence for dynamic instability.[45] He also discussed that August 2018 and September 2020 cervical MRI reports indicated only mild to moderate findings.[46] He further noted that a November 2020 EMG-nerve conduction study was suggestive of mild chronic left C5 and mild chronic right C5, C6, and C7 nerve root injuries without any active denervation, but with electrodiagnostic evidence of mild

---

supportability factor, and the consistency factor).

[40] *See* Pl. Br. 9-13.

[41] At oral argument, Plaintiff conceded that the ALJ arguably explained how he considered the consistency factor when assessing the persuasiveness of Dr. Iverson's opinions.

[42] AR 49; 20 C.F.R. § 404.1520c(c)(2) ("*Consistency*. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

[43] *Id.*

[44] *Id*.

[45] AR 43; AR 359; AR 361.

[46] *Id.*; AR 45; AR 359; AR 737-38.

chronic neurologic remodeling; but no evidence of any other frank cervical radiculopathy or any median/ulnar/radial mononeuropathy, or any peripheral neuropathy affecting the upper extremities.[47]

In addition, the ALJ considered that Plaintiff's treatment had been routine and conservative since Plaintiff's alleged onset date, consisting of only pain medications[48]  In June 2020, Plaintiff even acknowledged that his pain was adequately controlled with his treatment regimen.[49]

Further, the ALJ discussed physical examination findings and acknowledged that while there were some abnormal findings, Plaintiff also presented with largely normal findings.[50] For instance, the ALJ noted, *inter alia*, no acute distress, normal gait, normal cervical range of motion, no tenderness in the upper extremities, normal range of motion in the upper extremities, normal strength and reflexes in the upper extremities, normal sensation in the upper extremities,

---

[47] AR 45; AR 777. State agency reviewing consultant Ralph McKay, M.D., whose prior administrative medical findings the ALJ found persuasive, reviewed the EMG-nerve conduction study, and noted it was suggestive of mild nerve root injuries and no frank cervical radiculopathy. AR 47; AR 116; AR 120. Based on his review of the evidence, including the EMG-nerve conduction study and other imaging evidence, AR 115-16, Dr. McKay found Plaintiff capable of a range of light work with occasional climbing ladders, ropes, and scaffolds; occasional crawling; and occasional overhead reaching. AR 119-22. Plaintiff did not challenge the ALJ's consideration and reliance on the findings from Dr. McKay and therefore waived any such argument. *Keyes-Zachary v. Astrue* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [Plaintiff's] contentions that have been adequately briefed for our review."); *Anderson v. Dep't of Labor*, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005) (because Plaintiff did not raise an issue in her opening brief, it is waived).

[48] AR 49; *see, e.g.,* AR 384; AR 764; AR 777.

[49] AR 47; AR 763.

[50] AR 49.

normal range of motion of the shoulders, normal range of motion in the lower extremities, and normal strength and reflexes in the lower extremities.[51]

These well-supported considerations supported they ALJ's finding that Dr. Iverson's opinions were not consistent with the record as a whole.[52] Thus, the Court finds that the ALJ's consideration of the consistency factor is legally sound and supported by substantial evidence. Plaintiff did not specifically take issue with the above considerations in his brief and has thus waived his right to do so.[53] Instead, Plaintiff refers to a Functional Capacity Evaluation ("FCE") which he claims was consistent with Dr. Iverson's opinions.[54] However, Riley Nielson, DPT, who conducted the FCE evaluation, indicated that Plaintiff was capable of *medium* work.[55] Plaintiff does not explain why the findings in the FCE, which DPT Nelson relied on to assess *medium* work, were consistent with Dr. Iverson's more restrictive limitations. Regardless, even assuming that the findings in the FCE could be considered consistent with Dr. Iverson's opinions, the ALJ's decision is supported by substantial evidence for the reasons indicated above.[56]

### Supportability Factor

The ALJ further found Dr. Iverson's opinions unpersuasive because they were not well-supported.[57] Plaintiff argues that the ALJ did not provide a proper evaluation.[58] The Court

---

[51] AR 49; AR 378-79; AR 702-05; AR 774.

[52] 20 C.F.R. § 404.1520c(c)(2).

[53] *Keyes-Zachary,* 695 F.3d at 1161; *Anderson,* 422 F.3d at 1174, 1182, n.51.

[54] Pl. Br. 12-13.

[55] AR 713-14.

[56]*See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

[57] AR 49; 20 C.F.R. § 404.1520c(c)(1) ("*Supportability*. The more relevant the objective medical

disagrees. While the ALJ's discussion of the supportability factor may be of "less than ideal clarity," the ALJ's rationale can, nonetheless, "reasonably be discerned."[59]

When evaluating Dr. Iverson's opinions, the ALJ discussed Dr. Iverson's treatment record from February 2020, which indicated that while Plaintiff presented with tenderness over his upper thoracic spine and limited neck motion, he had normal strength and reflexes in his upper extremities as well as a normal gait.[60] Further, earlier in the decision, the ALJ discussed other records from Dr. Iverson, which also indicated minimal abnormalities.[61] The ALJ discussed that in June 2019, shortly after Plaintiff alleged disability, Dr. Iverson documented that Plaintiff had some decreased motion in his cervical spine and tenderness in the area of his (surgical) scar, but he was in no acute distress and had normal strength and reflexes in his upper extremities.[62] The ALJ further discussed that in September 2019, while Plaintiff frequently adjusted his position while sitting, he was in no acute distress and his gait was stable.[63] And the

---

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be.").

[58] Pl. Br. 11.

[59] *See Dai*, 141 S. Ct. at 1679 ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citations and internal quotation omitted); *see also Hendron,* 767 F.3d at 957 (the court should exercise "common sense" and not "insist on technical perfection."); *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (under substantial-evidence review, court "must view the record in the light most favorable to [that decision]" and "strive to harmonize statements where possible").

[60] AR 49; AR 760.

[61] AR 43-44; AR 385; AR 387; AR 764; *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.").

[62] AR 43-44; AR 387.

[63] AR 44; AR 385.

ALJ noted that in June 2020, Plaintiff had some tenderness in the mid-upper back and a mildly stiff neck, but he was in no acute distress.[64] Dr. Iverson's examination findings, indicating minimal abnormalities, support the ALJ's determination that Dr. Iverson's opinions were not well-supported.[65]

In addition, when providing his opinion in February 2020, Dr. Iverson explained that "most of [Plaintiff's] findings of pain and emotional findings have no way to verify objectively so I can do nothing but document what [Plaintiff] tells me."[66] In other words, Dr. Iverson accepted Plaintiff's subjective complaints as his limitations. Plaintiff seems to claim this supported Dr. Iverson's opinions.[67] The Court disagrees. The Tenth Circuit has explained that "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability."[68] Further, the ALJ considered Dr. Iverson's explanation.[69] The ALJ also considered Plaintiff's subjective complaints and explained why he found the evidence did not support the extent of limitations alleged by Plaintiff.[70] Thus, a fair reading of the ALJ's overall decision demonstrates

---

[64] AR 44; AR 764.

[65] 20 C.F.R. § 404.1520c(c)(1).

[66] AR 427.

[67] Pl. Br. 11.

[68] *Mileto v. Comm'r, SSA*, 2022 U.S. App. LEXIS 35585, at *7 (10th Cir. Dec. 23, 2022) (unpublished) (citation omitted).

[69] AR 49.

[70] AR 47-48; AR 49 (discussing evidence inconsistent with Plaintiff's allegations when discussing prior administrative medical findings). Plaintiff does not challenge the ALJ's subjective symptom evaluation and thus has waived his right to do so. *See Keyes-Zachary*, 695 F.3d at 1161 (waiver); *Anderson*, 422 F.3d at 1174, 1182 n.51 (wavier).

that the ALJ found Dr. Iverson's opinions unsupported because they were largely based on Plaintiff's self-reports.[71]

Plaintiff also points to an August 2018 cervical MRI that Dr. Iverson relied on in support of his September 2019 opinion.[72] Notably, the ALJ discussed the MRI when evaluating Dr. Iverson's opinions.[73] However, the ALJ determined that the imaging did not reflect the degree of limitation indicated by Plaintiff.[74] Indeed, the ALJ earlier discussed that the MRI showed no significant central or bilateral neuroforaminal narrowing and only mild disc osteophyte complexes at two levels of the fusion without significant narrowing.[75] Further, the ALJ considered that Plaintiff continued working until May 2019,[76] well after the August 2018 MRI. Thus, the ALJ's consideration of the MRI evidence supports his determination that Dr. Iverson's opinions were not well-supported.

In reviewing the record to determine whether substantial evidence supports the ALJ' s decision, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[77] While the Court would have preferred a clearer explanation by the ALJ regarding the supportability factor, the ALJ's rationale can "reasonably be discerned."[78] Accordingly, the

---

[71] *Mileto*, 2022 U.S. App. 35585, at *7 (holding ALJ properly considered supportability where the provider "largely cited [the claimant's] subjective complaints").

[72] Pl. Br. 11; AR 422.

[73] AR 49 (noting imaging)).

[74] *Id*.

[75] AR 43; AR 47; AR 359; AR 489-90.

[76] AR 47.

[77] *Noreja,* 952 F.3d at 1178.

[78] *Dai*, 141 S. Ct. at 1679.

Court finds that the ALJ's consideration of the supportability factor is legally sound and supported by substantial evidence.

## III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED and Plaintiff's Motion for Review of Agency Action is DENIED.[79]  Judgment shall be entered in accordance with Fed. R. Civ. P. 58.[80]

DATED this 29th day of November, 2023.

_____
DUSTIN B. PEAD
United States Magistrate Judge

---

[79] ECF No. 11.

[80] *Shalala v. Schaefer*, 509 U.S. 292, 296-304, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993).